RICHARD WARREN, appellant,

v.

JOSEPH E. TYNAN, respondent.

1. At a sheriff's sale of land, complainant and defendant jointly bid in the property and each paid one-half of the price. Afterwards, they orally agreed that the sheriff should convey the property to the defendant alone and that he should hold it for the equal benefit of himself and the complainant, and such conveyance was accordingly made.—*Held*, that the complainant had a resulting trust in the land arising out of the payment of half the price, and not an express trust depending on the oral agreement.

2. A resulting trust is not converted into an express trust by being set forth fully by the trustee in his answer in chancery.

3. A resulting trust founded on parol may be rebutted, put down or discharged by parol.

On appeal from a decree advised by Vice-Chancellor Green, whose opinion is reported in *Tynan v. Warren, 8 Dick. Ch. Rep. 313.*

*Mr. Michael Dunn* and *Mr. Eugene Stevenson*, for the appellant.

*Mr. George S. Hilton*, for the respondent.

The opinion of the court was delivered by

DIXON, J.

The bill in this case was filed to establish a trust in a certain house and lot situate in Paterson. The facts, scarcely disputed, are that in November, 1878, the complainant and defendant jointly bid in the property at a sheriff's sale and each paid one-half of the purchase-money; that they thereupon agreed that the sheriff should convey the property to the defendant alone and that he should hold it for the joint and equal benefit of himself and the complainant; that the conveyance was so made; that in

Warren *v.* Tynan.

the early part of 1881, after the defendant had prepared a deed for conveying to the complainant an undivided half of the property, an oral agreement was entered into between the parties, by which the defendant assumed sole liability for certain obligations previously resting upon both, and the complainant relinquished all interest which he had in the property; that the deed prepared was thereupon, by direction of both parties, destroyed, and thereafter the defendant paid the assumed obligations and acted as sole and undisputed owner of the property until the year 1892, when the bill was filed.

On this state of facts the learned vice-chancellor before whom the cause was tried, decided that the trust created in 1878 was express; that it was sufficiently manifested by the defendant's answer, and that it could not be, and therefore was not, relinquished by the parol agreement made in 1881.

We are constrained to dissent from the opinion that the trust was express.

At the time when the agreement, which is supposed to have created an express trust, was made, neither party had any legal title to the property, but each, by his bid and payment of one-half of the price, had become entitled to a resulting trust in an undivided half of the property, subject to compliance with the conditions of the sheriff's sale. The agreement thereupon made, with regard to the transfer and tenure of the legal title, was simply an explicit provision for the maintenance of the complainant's pre-existing equitable estate. It was not intended to change the nature of that estate or to vest in him any interest in the estate which the defendant then possessed or could in equitable contemplation then acquire. It was merely a mutual recognition of the rights which, by operation of law, belonged to the complainant and would continue to be his after the conveyance of the legal title to the defendant.

Nor do the statements in the answer transform the original resulting trust into an express trust. Such statements are not regarded as the declaration or creation of a trust, which the general principles of equity require; they are only the manifestation and proof of a trust, which the statute of frauds renders

necessary in certain cases. The character of the trust, as an express or implied one, depends not on the manner in which its existence is proved after it has been created, but on the nature of the facts which brought it into being. If a defendant, by setting forth fully in his answer the relations between himself and his *cestui que trust*, could convert a parol resulting trust into an express trust, then this startling consequence would seem to follow, that by interposing the statute of frauds as a bar to the enforcement of the trust, he might, according to a rule of equity pleading, defeat a trust to which, but for his answer, the statute would not have applied.

We think the trust in this case was always a resulting trust.

Such a trust, founded on parol, may be rebutted, put down or discharged by parol. *Botsford* v. *Burr, 2 Johns. Ch. 405; Livermore* v. *Aldrich, 5 Cush. (Mass.) 431; Dean* v. *Dean, 1 Stock. 425, 431; Peer* v. *Peer, 3 Stock. 432.* Therefore, in the present case, the trust arising in 1878 was completely discharged by the contract made between the parties in 1881.

But the complainant insists that afterwards the contract of 1881 was, by mutual consent, rescinded. We are not satisfied that such a rescission is proved; but, if it were, it is difficult to see how that could support the bill of complaint. The rescission by mutual consent would only be a new agreement, and not being accompanied by any facts out of which a trust would result, and not being itself evidenced in writing so as to form the basis of an enforceable express trust, it could not affect the defendant's legal title.

Without adverting to the laches of the complainant, we are of opinion that the decree in his favor should be reversed, and his bill dismissed.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BOGERT, BARKALOW, NIXON—11.

*For affirmance*—None.